## McWilliams' Estate.

*Wills—Validity—Alleged alteration—Handwriting experts—Absence of corroboration—Weight—Petition for issue d. v. n.—Refusal.*

1. After direct evidence has been given on the subject of handwriting, the evidence of experts is admissible in corroboration, but the evidence of experts, without the support of other evidence, is insufficient to attack the validity of a document.

2. Where a petition for an issue devisavit vel non alleged that the last paragraph of the will had been added thereto after the execution thereof by testator and without his knowledge or con-

sent, but where the scrivener of the will testified that he wrote the entire will with the exception of the signature of the testator and the witnesses, in the presence of the testator and the subscribing witnesses, and where the only evidence in behalf of the contestants was that of handwriting experts, who testified that the paragraph in controversy was not in their opinion written with the same pen and ink as the other portions of the will, the court made no error in dismissing the petition.

Argued Sept. 27, 1917. Appeal, No. 19, Oct. T., 1917, by Homer McWilliams, and S. S. McWilliams and William McWilliams, Jr., from decree of O. C. Westmoreland Co., May T., 1915, No. 161, refusing an issue devisavit vel non, Estate of David McWilliams, deceased. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Petition for issue devisavit vel non.
COPELAND, P. J., filed the following opinion:
David McWilliams, late of Madison Borough, Westmoreland County, Pennsylvania, deceased, died testate on the 25th day of January, 1914, first having made his last will and testament in writing, dated the 24th day of May, 1912. This will, after his death, was duly probated and recorded on the 30th day of January, 1914, in Will Book 18, page 236. By this will, the testator devised and bequeathed as follows:

"1st. I will devise and bequeath that after my death all my just debts and funeral expenses be first paid by my executor out of my estate.

"2nd. I will devise and bequeath that my executors shall have a monument put to my lot in the cemetery for myself and wife to cost not less than $150.

"3rd. I will that my executor shall put $100.00 on interest, the interest of which shall be used for keeping my lot in the cemetery in repair.

"4th. I will devise and bequeath to my beloved wife Barbary McWilliams all the rest of my estate both real personal and mixed absolutely as her own.

"5. And lastly if my wife Barbary McWilliams should die before me then my express will and meaning is that the whole of my estate both real, personal and mixed wherever found shall go to Ida M. Ruff and Harry E. Ruff."

On the 18th day of January, 1915, H. C. McWilliams, S. S. McWilliams, William McWilliams and F. G. Cooper, nephews of the decedent, appealed to the Orphans' Court of Westmoreland County from the decision of the register of wills admitting to probate this paper writing alleged to be the last will and testament of the decedent, and from the granting of letters testamentary thereon. A bond in the sum of five hundred ($500) dollars, at the same time, was filed by the appellants, conditioned that they pay all or any costs which may be occasioned by reason of such appeal and which may be decreed by the Orphans' Court to be paid. At the time of filing this appeal and bond, a motion was filed to strike off the appeal from the probate because it did not appear, from the appeal filed, the nature and character of appellants interest in the estate. We might say in passing—for it is not clear to us that this motion was disposed of— that the appeal shows they were nephews of the decedent and, of course, would be entitled to inherit as collateral heirs, if the decedent died intestate, he being without issue and his wife dead.

On the 28th day of June, 1915, a petition was presented to this court by the parties appealing from the decision of the register of wills admitting this writing to probate, setting forth the facts they expected to be able to prove and praying that a citation be awarded directed to all parties interested, to wit: Ida M. Ruff and Harry E. Ruff, the persons to whom, under the alleged will, the entire estate of the decedent goes, to show cause why the appeal should not be sustained and why an issue should not be awarded to try the following questions:

"First. Whether or not the fifth paragraph of the said last will and testament devising the whole of his estate,

both real, personal and mixed, to the said Ida M. Ruff and Harry E. Ruff was procured by undue influence on the part of the said Ida M. Ruff and Harry E. Ruff and others.

"Second. Whether or not the said fifth paragraph of the said last will and testament of the said David McWilliams, deceased, is part of the said last will and testament.

"Third. Whether or not the said writing, as probated, is the last will and testament of the said David McWilliams, deceased."

The same day an order was made that a citation issue, directing all the parties named in the petition to appear and show cause why the prayer of the petitioners should not be granted. This citation was made returnable to Saturday, the 17th day of July, 1915, at 9 o'clock a. m.

In response to this citation, on the 14th day of July, the parties named therein appeared, traversed all the matters set forth in the petition, denied all the allegations therein contained, and prayed that the petition of the appellants be dismissed at their costs.

Afterwards, to wit: on the 11th day of September, 1915, a petition was filed by S. S. McWilliams, one of the administrators of the estate of Joseph McWilliams, deceased, a brother of the decedent in this case, to amend the petition for citation and issue so as to make J. Collins Greer and S. S. McWilliams, administrators of the estate of Joseph McWilliams, deceased, parties to this contest. This amendment was allowed by the court.

With the issue framed by the petition and answers, the matter came on to be heard, on the 28th day of December, 1915, when the testimony attached hereto was taken. It is from this testimony we are now to determine whether we shall award an issue to try the questions of fact prayed for in the petition of the contestants.

While it is alleged in the petition for an issue that David McWilliams was, at the time of the execution of this alleged will, weak in mind, memory and under-

standing, from sickness, extreme age, bodily weakness, infirmities and other cause, and that the fifth paragraph of this writing alleged to be his last will was procured and caused to be written by artful contrivances and undue influence, fraud and duress of Harry E. Ruff, Ida M. Ruff and others; yet this testimony fails to show—we believe not a single witness testified—that the decedent was of weak mind and without testamentary capacity, or that undue influence was exercised over him by the proponents. The only question to which it is necessary for us to direct our attention is, whether or not the fifth paragraph in this will was inserted by the scrivener after the decedent signed it. The whole contest narrows itself down to the determination of this question. To this, and this question alone, was testimony offered by the contestants of the will. It is now for us to say, from this testimony, whether that testimony is of sufficient weight and directness as would justify us in sending an issue to the Common Pleas Court for trial by jury.

Harry E. Ruff, the scrivener of the will, says that he wrote the entire will, with the exceptions of the signature of the testator and the witnesses to the will, just as it appears to-day, before David McWilliams or the subscribing witnesses signed it; that the fifth paragraph was in the will before it was executed by the decedent and witnessed by the Rogers boys; that he used a fountain pen in writing it; that it was written with one kind of ink; and that the testator and the subscribing witnesses used the same pen and the same ink in executing and witnessing it. This testimony of Mr. Ruff was elicited by the appellants as if under cross-examination. One of the subscribing witnesses, on cross-examination, said that this paper was signed and executed by David McWilliams and witnessed by himself and brother with the same pen, and that he saw no other pen that day. Outside of the experts, the contestants have produced no witnesses to prove the contrary of what was testified to by Mr. Ruff and the subscribing witnesses. There is not a

witness produced by the contestants who says that this fifth paragraph was not in the will at the time David McWilliams signed it. There is not a witness produced by the contestants who says that this fifth paragraph was inserted by Harry E. Ruff after or immediately before Barbary McWilliams' death, without the knowledge or consent of David McWilliams, or out of his presence; and there is not a witness who says that this fifth paragraph was written with a different pen and with a different ink from that used in writing the balance of the will.

The fact that David McWilliams signed the paper, which is not denied by the contestants, is evidence that he knew the contents of this paper at the time of signing and that the fifth paragraph was there at that time. Of course, this is presumptive evidence but still it must be overcome. Then, again, the fact that these contestants, in their petition for a citation on the framing of an issue, averred undue influence on the part of Harry E. Ruff and Ida M. Ruff in procuring the execution of this fifth paragraph, is an admission that it was in the will at the time it was executed by David McWilliams. We have, in addition to all of this, the testimony of Harry E. Ruff that the fifth paragraph was written in the will before it was signed by the testator, together with his testimony and that of Daniel Rogers as to the whereabouts of the will and the envelope in which it was kept. All point conclusively that this fifth paragraph was never written in this will at the time or in the manner the contestants now contend.

Against this positive testimony we have the testimony of two experts on handwriting, namely, John H. Mc-Klveen and George W. Wood whose testimony, when boiled down, amount to this: that there was a different pen and a different ink used in writing the fifth paragraph of this will. They do not pretend to say it was written at a different time from the writing and execution of the balance of the will, or that it was not written

in the presence of the testator and at his direction. The inference we are expected to draw from their testimony that it was written with a different pen and ink is that this fifth paragraph was placed in the will after its execution. This we cannot do and we refuse to allow a jury to predicate a guess on that testimony alone. It is true, the scrivener said that he used but one pen and one ink in writing the entire will which is in conflict with this expert testimony, but if different pens and ink had been used, we are unable to see how it would have hurt his case to have so testified. An examination of the will, especially the signatures of the testator and that of the witnesses, show as marked a difference as to the color of the ink as there exists between the fifth paragraph and the balance of the body of the will. And so an examination and comparison of the part complained of and other parts of the will do not convince us that it would be safe to draw the conclusion desired by the contestants. This is our opinion of the evidence.

The evidence of these two experts do not corroborate any testimony on the part of the contestants and is not sufficient in itself, when taken alone, to prove that this fifth paragraph was added to this will by Harry E. Ruff after its execution by the testator. Our notion of the law is that expert testimony, such as was offered in this case, cannot be received as independent testimony to establish the facts or conclusions sought by the contestants to be established or drawn. Such testimony can only be received as corroborating other direct or positive evidence as to some fact in issue.

In Fulton v. Hood et al., 34 Pa. 365, a question as to the alteration of the date in the bond was involved. The person who wrote it testified positively that no alteration was made after the signature. On the other hand the sons of the decedent, on account of whose indebtedness the bond was given, testified that the date was changed. The allegation of the defendant was that the last line of the instrument had been added after its execution and de-

livery, and after it had been taken away by the agent of the plaintiffs. To meet this allegation, the plaintiffs were allowed to call experts, and prove by them that, in their opinion, the whole instrument, including the last line, was written by the same hand, with the same pen and ink, and at the same time. The admission of this expert testimony was the subject of an assignment of error. Mr. Justice STRONG in delivering the opinion of the court said (page 370):

"It is to be observed, that the evidence was offered only after direct testimony had been given to prove that the bond was genuine, and that it was in the same condition as when signed by the defendant. It was admitted, not as independent, but as corroborative evidence."

In the case of Burkholder v. Plank, 69 Pa. 225, we find this language at the conclusion of the opinion of Mr. Justice SHARSWOOD:

"It may be considered as well settled in this State by Fulton v. Hood, 34 Pa. 365, and Travis v. Brown, 43 Pa. 9, that after direct evidence has been given on the subject of handwriting, the evidence of experts is admissible in corroboration."

To the same effect we have the late cases of Masson's Est., 198 Pa. 636, and Fuller's Est., 222 Pa. 182.

The evidence upon the part of the contestants we think is insufficient to justify our sending an issue to the Court of Common Pleas for trial to determine whether the fifth paragraph in his will was executed, all other questions being abandoned. We would, in conscience, be constrained, if sitting as a trial judge, to set aside a verdict if found by a jury against this will and, therefore, we are of the opinion that the issue should be refused.

The court dismissed the petition. Homer McWilliams, S. S. McWilliams and William McWilliams, Jr., appealed.

*Error assigned* was the decree of the court.

John E. Kunkle, for appellants.

John P. Pinkerton, for appellees.

PER CURIAM, January 7, 1918:

The decree dismissing the petition for an issue devisavit vel non and sustaining the decision of the register admitting the will of David McWilliams, deceased, to probate is affirmed on the opinion of the learned judge of the Orphans' Court.