# Jones Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Montgomery, McCracken Walker & Rhoads*, for preliminary objections.

*Schnader, Harrison, Segal & Lewis*, and *Romeika, Fish & Scheckter*, contra.

BOLGER, J., October 23 1959.—The present protracted will contest which was started almost two years after testator's death was about to be tried on petition and answer in a d. v. n. issue upon averments of lack of testamentary capacity and of undue influ-

ence when appellant, testator's daughter, filed a petition for citation to show cause why her petition sur appeal from the register should not be amended by adding the ground of forgery. Proponent, testator's widow, has filed preliminary objections to this petition raising two points of law: (1) That petitioner's averments of lack of testamentary capacity and of undue influence contained in the original petition admitted the genuineness of testator's signature and, therefore, the added charge of forgery is inconsistent and contradictory; (2) that the allegation of forgery as set forth in the proposed amended petition is not supported by a sufficient statement of facts and circumstances, citing Howard's Estate, 45 D. & C. 588, (1942). Parenthetically, although the point is not raised, the injection of the allegation of forgery more than two years after probate does not offend the two-year limitation for appeal. Forgery being fraud practiced upon the register tolls the running of the statute: Culbertson's Estate, 301 Pa. 438; also Howard's Estate, supra.

If the second ground for objection is to be sustained, the first ground becomes moot. Therefore, we will first discuss and decide the second point. Is the conclusion of forgery supported by a sufficient statement of facts and circumstances? The rule laid down in Howard's Estate, supra, was stated by Stearne, J., page 589: "It has been repeatedly held that the petition must set forth facts as to who committed the forgery, or all facts and circumstances under which it was committed. Forgery may not be charged merely as a conclusion: Henry's Estate, 276 Pa. 511, 514; Roberts' Estate, 309 Pa. 389, 392."

The proposed amended petition reads as follows:

"7. Petitioner is informed by competent expert authority, believes and therefore avers that the two purported signatures of the decedent appearing on the

alleged will are not the signatures of the decedent, and are therefore forgeries. Consequently, the writing probated as the last will and testament of the decedent is not in fact the decedent's will and is invalid as such.

"8. Petitioner is informed by competent expert authority, believes and therefore avers that the entire contents of the alleged will, which purports to be holographic, were not written by the decedent."

Is this language too vague in that it does not aver sufficient facts and circumstances from which proponent is informed sufficiently to be required to file an intelligently responsive answer? Does it rely solely upon expert opinion testimony of the handwriting of the holographic will and of testator's two signatures? Finally, does the language, standing alone, raise a substantial dispute as to the validity of the will in accordance with Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 745, 20 PS §2080.745, which limits the granting of an issue to a trial by jury to instances where "a substantial dispute of fact shall arise concerning the validity of a writing alleged to.be testamentary. . . ."

The language of the two paragraphs quoted from the proposed petition would appear to indicate that the charge of forgery is based solely upon expert testimony. The subject of expert testimony concerning forgery in will contests has received a great deal of attention in our appellate decisions. They are summarized in I Hunter, Pennsylvania Orphans' Court Commonplace Book, (2d ed.), Contests of Wills, §14(b), page 392:

"14(b). Evidence.

". . . expert's testimony . . . [is] of little weight as against direct proof of execution." To illustrate, in Porter's Estate, 341 Pa. 476, 482, 483, Justice, later Chief Justice, Maxey cited with approval DeLaurentiis' Estate, 323 Pa. 70, and Phillips' Estate, 244 Pa.

35, and quoted from the latter case as follows: " 'In McWilliams's Est., 259 Pa. 526, 532 (103 A. 365), the rule was stated to be that expert testimony of this kind cannot be received as independent testimony but only "as corroborating other direct or positive evidence as to some fact in issue." This is more satisfactorily expressed in Henry's Est., 276 Pa. 511, 513 (120 A. 454), where it is said that: "The trial court based its refusal of this issue upon the ground that the opinion evidence, *standing alone*, as it did, would not sustain a finding of forgery, in the face of the direct and credible evidence. This accords with our decision. . . . Were the direct evidence discredited, or the opinion evidence strengthened by facts and circumstances, the case might be different." ' "

The above-cited authorities other than Howard's Estate, supra, deal with the weighing of expert testimony at trial. We have not yet arrived at that stage of this proceeding. We are here merely considering the sufficiency of pleadings, not trial evidence. It is quite clear that the weight of expert testimony of forgery on behalf of a contestant depends upon the facts of each case, including the relative strength or weakness of the testimony of proponent. In other words, if the proof of execution is not direct, this circumstance adds dignity to the contestant's expert testimony. The record before us, including the record of probate, does not reveal whether there were direct witnesses to the will. The will itself, purportedly a holographic instrument, does not reveal the names of any subscribing witnesses. On the contrary, the register's record discloses that for purposes of probate he relied upon the affidavit of two persons who swore they knew testator's signature. This would appear to support the statement of counsel for the contestant at the argument that there is no one alive today who saw the will drawn or executed. All of these and possibly more are important

negative facts which, if true, would operate to give greater weight to petitioner's expert testimony than such testimony would, in accordance with the authorities above cited, otherwise receive. However, appellant has not averred those facts nor has proponent admitted them and we cannot, therefore, accept them at this time. In the absence of such facts from the record, petitioner is in grave danger of having preliminary objections sustained.

We are satisfied, therefore, that the contestant should amend her petition in accordance with this opinion. It is our frequent practice in passing upon preliminary objections, in the interests of justice, to permit the filing of an amended petition rather than to sustain preliminary objections: Reichert's Estate, 52 D. & C. 254 (1944) ; Schmitz Trust, 3 D. & C. 2d 185. We believe this is such a case. Any ruling upon proponent's first point must await such amendment.

The preliminary objections are sustained pro forma with leave to petitioner to amend her proposed amended petition within 15 days.