## Rehrig v. Fortunak

*Murray Mackson*, for petitioners.
*Prutzman & Quinn*, for respondents.

HEIMBACH, P. J., January 12, 1966.—On March 4, 1957, plaintiffs sold to defendants, through their agent, Kenneth Seaboldt, a realtor, now deceased, premises known as the Acme Store, 23 Broadway, Jim Thorpe, Carbon County, Pa., for the sum of $17,000. Thirteen thousand dollars was paid by check, and the balance of $4,000 was secured by defendants' judgment note. The note was dated March 4, 1957, and payable one day after date.

On March 5, 1957, judgment was confessed on this note and filed of record in the prothonotary's office to January term, 1957, no. 147. On March 8, 1962, the judgment was amicably revived.

On January 31, 1965, Albert P. Leonzi, one of the defendants, died, and plaintiffs made demand on the remaining defendants for payment of the amount due. On June 11, 1965, defendants, Gladys F. Leonzi and Josephine Fortunak, hereinafter referred to as petitioners, presented their petition to open the judgment confessed against them, alleging their signatures on the original note, as well as on the amicable revival form, were forgeries. Upon such petition, we granted a rule. An answer having been filed, depositions having been taken and argument had, we are now called upon to determine the controversy.

## FINDINGS OF FACT

1. Josephine Fortunak, one of the petitioners, is the wife of George Fortunak, and resides at 406 West Iron Street, Summit Hill, Carbon County, Pa.

2. Gladys F. Leonzi, the other petitioner, is the wife of Albert P. Leonzi, deceased, and resides at 20 East Holland Street, Summit Hill, Carbon County, Pa.

3. Plaintiffs, Ralph C. Rehrig, Lulu M. Rehrig and Estella I. Diehl, are individuals who reside in the Borough of Lehighton, Carbon County, Pa.

4. On March 4, 1957, Albert P. Leonzi, Gladys F.

Leonzi, his wife, George Fortunak and Josephine Fortunak, his wife, purchased the premises known as the Acme Store, 23 Broadway, Jim Thorpe, Carbon County, Pa., from plaintiffs herein for the sum of $17,000.

5. The consideration was paid by a check in the amount of $13,000 and a judgment note in the amount of $4,000, dated March 4, 1957, payable one day after date to plaintiffs and having thereon the names of defendants as makers.

6. The judgment was amicably revived on March 8, 1962, and filed in the prothonotary's office.

7. The late Kenneth Seaboldt, a realtor, represented plaintiffs and, in their absence, consummated the transaction, delivering to plaintiff Ralph C. Rehrig, a check for $13,000 and the aforesaid judgment note in the amount of $4,000.

8. Josephine Fortunak gave $1,500 to Albert Leonzi to purchase a partnership interest, along with the Leonzis and her husband, in said premises.

9. All negotiations for the purchase and sale of the premises were carried on by Albert Leonzi and Kenneth Seaboldt, respectively.

10. The deed from plaintiffs to defendants is recorded in the office for the recording of deeds at Jim Thorpe, Carbon County, in deed book no. 190, page 145.

11. Although not included in the record before us, but called to our attention by counsel for plaintiffs at the time of oral argument, is a mortgage dated March 4, 1957, bearing the names of defendants as mortgagors and secured by the instant premises for $11,500, payable to the Mauch Chunk Trust Co., mortgage recorded March 5, 1957, and of record in mortgage book vol. 159, page 65.

12. On January 2, 1959, defendants executed another mortgage for the same premises, identical in all respects, excepting a provision for lesser quarterly

installments. This mortgage was recorded in mortgage book vol. 167, page 394. The mortgage referred to in paragraph 11 was then satisfied of record.

13. The signatures of petitioners on the subject note, entered as a judgment, and amicable revival thereof, were affixed by Albert Leonzi.

14. Albert Leonzi solely managed the property, kept the records, paid the expenses and prepared and filed the partnership tax returns.

## DISCUSSION

We are asked to open the subject judgment as to Gladys Leonzi and Josephine Fortunak upon their averment that their signatures are forgeries and that at no time had either authorized any one else to sign their names.

It is fundamental that an application to open a judgment entered upon a warrant of attorney is an equitable proceeding and addressed to the sound discretion of the court: Mutual Building and Loan Association of Shenandoah v. Walukiewicz, 322 Pa. 240. There is no inflexible rule requiring the court to open the judgment upon an averment of forgery: Yank v. Eisenberg, 408 Pa. 36. The weight of evidence and credibility of the witnesses are for the judge who sits as a chancellor: Jenkintown National Bank's Appeal, 124 Pa. 337; Augustine v. Wolf, 215 Pa. 558, 562; Mutual Building & Loan Association of Shenandoah v. Walukiewicz, supra.

*As to the Equities:*

Plaintiffs sold their property through a real estate agent without any contact with the purchasers whatsoever, merely receiving the agreed consideration. Petitioner Josephine Fortunak and her husband candidly admit that they intended becoming partners in the premises. Josephine Fortunak, with the full knowledge of her husband, George Fortunak, gave Albert Leonzi

$1,500 on account of the purchase price. Throughout the years, they, the Fortunaks, without objection, permitted Albert Leonzi solely to manage the premises, pay the expenses and prepare for their signatures the annual partnership income tax return.

Gladys Leonzi denied that she ever authorized Albert Leonzi to sign her name to any instrument to which she was a party. She did admit, however, that her husband alone, and without consulting her, conducted all business transactions involving their property. Whenever her name was needed on any instrument, she signed willingly and without question, never knowing the reason for so doing. She recalled that titles to all automobiles, with the exception of an Oldsmobile, and titles to all real estate purchased by her husband were held as tenants by the entireties. Bank accounts in the Bank of Lehighton and the Mauch Chunk Trust Company were held by both as tenants by the entireties. She stated that she first learned that the Acme property had been purchased two years after it was actually purchased, but did not know how title was held.

We conclude that Albert Leonzi was the constituted agent of all defendants in the instant matter, with full authority to act for them in the fashion he did. The direct testimony of the Fortunaks as to them shows this is so. The testimony of Gladys Leonzi establishes that her husband was generally authorized to act for her in all business transactions. No protest of his actions was made by any one until after his death, some eight years after the transaction took place.

We hold this transaction is governed by section 3-403 (1) of the Uniform Commercial Code of April 6, 1953, P. L. 3, as amended, which provides:

"(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No

particular form of appointment is necessary to establish such authority".

The Uniform Code comment to this provision reads:

"3. Assuming that Peter Pringle is a principal and Arthur Adams is his agent, an instrument might, for example, bear the following signatures affixed by the agent—

"(a) 'Peter Pringle,' or

"(b) 'Arthur Adams,' or

"(c) 'Peter Pringle by Arthur Adams, Agent,' or

"(d) 'Arthur Adams, Agent,' or

"(e) 'Peter Pringle
Arthur Adams,' or

"(f) 'Peter Pringle Corporation
Arthur Adams' ".

Even had we found the signatures of Gladys Leonzi and Josephine Fortunak were unauthorized, their position would not be helped. Their subsequent conduct brings them under section 3-404(2) of the Uniform Commercial Code:

"Any unauthorized signatures may be ratified for all purposes of this Article. Such ratification does not of itself affect any rights of the person ratifying against the actual signer".

The Uniform Code comment to this provision reads:

"(1) 'Unauthorized signature' is a defined term (Section 1-201). It includes both a forgery and a signature made by an agent exceeding his actual or apparent authority.

". . .

"(3) Subsection (2) is new. It settles the conflict which has existed in the decisions as to whether a forgery may be ratified. A forged signature may at least be adopted; and the word 'ratified' is used in order to make it clear that the adoption is retroactive, and that it may be found from conduct as well as from express statements. Thus it may be found from the retention

of benefits received in the transaction with knowledge of the unauthorized signature; and although the forger is not an agent, the ratification is governed by the same rules and principles as if he were".

Although not included in the record before us, counsel for plaintiffs in his brief called our attention to a mortgage dated March 4, 1957, recorded March 5, 1957, in Carbon County Mortgage Book, vol. 159, page 65, wherein petitioners joined with their respective spouses in mortgaging the instant premises to the Mauch Chunk Trust Company for $11,500, payable in quarterly installments of $334.14. It is recited therein that the property mortgaged is the same premises conveyed by Ralph C. Rehrig, Lulu M. Rehrig and Estella I. Diehl to George Fortunak, Josephine Fortunak, Albert P. Leonzi and Gladys F. Leonzi. Mortgagors' signatures were witnessed and acknowledged by Kenneth Seaboldt. Said mortgage was satisfied January 6, 1959, when another mortgage, executed by petitioners and their spouses and dated January 2, 1959, was recorded January 6, 1959, in mortgage book vol. 167, page 394. Said mortgage is identical in all respects, except for a provision for payment of lesser quarterly installments. The signatures of the mortgagors were witnessed and acknowledged by Frank Wehr, Clerk of Quarter Sessions Court of Carbon County. We conclude petitioners do not question the genuineness of their signatures on either mortgage, since they have not questioned the assertion of plaintiffs' counsel that this is so.

In view of this record, we conclude that both petitioners did have knowledge of the entire transaction. They knew they were part owners of the property from the day the property was purchased. They likewise knew the property was encumbered. Permitting, as they did, the complete purchasing and management of the property to Albert Leonzi, it leads to the inevitable conclusion that all of his acts concerning such prop-

erty, and particularly the execution of the note in question, have been ratified.

For the foregoing reasons, we dismiss petitioners' rule to open the judgment and enter the following

DECREE NISI

Now, to wit, January 12, 1966, petitioners' petition to open the judgment is dismissed at petitioners' cost.

Same date, if no exceptions are filed to the decree nisi within 20 days hereafter, the prothonotary, upon praecipe, shall enter the same as a final decree.