## Muldowney v. BCA Division of Federal-Mogul Corporation

*James J. Kirchner,* for plaintiff.
*Barley, Snyder, Cooper & Mueller,* for defendant.

BROWN, J., May 5, 1972.—In this case John F. Muldowney, plaintiff, brought an action in assumpsit against Bearings Company of America Division of Federal-Mogul Corporation (BCA Division of Federal-Mogul Corporation), defendant, to recover the sum of $1,585.25 which he claimed was owing to him as separation pay when his employment was terminated by defendant on June 22, 1970.

Plaintiff was employed by defendant from April 2, 1959, until June 22, 1970, a period between 11 and 12 years. Plaintiff contends that defendant corporation had an agreement or policy with its employes that, in the event employment was terminated at the request of defendant, it would pay that employe separation pay depending upon the length of employment of the employe. Defendant through its witnesses denied that there was a fixed policy or agreement regarding separation pay. The jury on October 14, 1971, found a verdict in favor of plaintiff in the amount of $1,585.25 plus six percent commencing from January 15, 1971, and against defendant. Defendant has filed motions for a new trial and for judgment n.o.v. which are now before the court en banc for disposition.

Defendant has filed a combined motion for a new trial and judgment n.o.v. in which he alleges the verdict is against the law, the evidence, the weight of the evidence, and the charge of the court. He further contends in reasons 5 and 6 that the learned trial judge erred in refusing to grant defendant's

motion for a compulsory nonsuit and in refusing to grant defendant's motion for a directed verdict. Since there are no allegations of trial error except the refusal to grant the nonsuit and enter a directed verdict, the court determines primarily that there is no merit to the motion for a new trial and will determine this matter solely on the issue of whether or not defendant is entitled to judgment n.o.v.

The verdict having been in favor of plaintiff, the testimony should not only be read in the light most advantageous to the party who has the verdict, but should also give him the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence. See Welch v. Sultez, 338 Pa. 583; Miller v. Hickey, 368 Pa. 317. The record at the close of the trial, without any correction of errors in the admission or exclusion of evidence, determines the right of the court to enter judgment n.o.v. under the Act of April 22, 1905, P. L. 286, 12 PS §681. See Heffron Admrx. v. Prudential Insurance Company of America, 137 Pa. Superior Ct. 69. A court is without power to enter judgment n.o.v. under the statute where the evidence is conflicting on a material fact, or any other reason exists which precludes a binding direction. See Hostetter v. Kniseley, 322 Pa. 248. The evidence in the case at bar was conflicting and was a question of fact for the jury.

The problem before the court concerns itself with the policy statements of defendant which were offered in evidence as CP No. 1 and CP No. 2. There seems to be some confusion in the testimony as to whether the separation pay clause in CP No. 1 dated April 14, 1959, or the separation pay clause contained in the policy statement introduced as CP No. 2 dated March 15, 1968, are applicable to the problem here because the testimony is confusing as to whether defendant's contention is based on either the first or second policy

statement. In any event, both statements as to separation pay are almost identical. It appears to the court that since the termination of defendant's employment occurred June 22, 1970, he was operating under the second policy statement which is practically the same as the first policy statement so far as separation pay is concerned. This provision is as follows: "III. *Separation Pay* An employee who is terminated by the Company, or who resigns at the request of the Company, for any reason other than misconduct, dishonesty, insubordination or retirement, may be paid separation pay at the time of termination, subject to the prior approval of the Industrial Relations Division Detroit, in addition to accumulated vacation credits and pay in lieu of notice, in accordance with the following schedule: . . ."

It is to be noted that the phrase *may be paid separation pay at the time of termination*, appears in this clause and this is what makes the question a close one as to whether or not plaintiff in this case is entitled to separation pay. If this clause stood alone in the record in this case the court would be inclined to consider it binding on plaintiff and deny him separation pay, which would warrant the entry of a judgment n.o.v. However, the record shows that while plaintiff began work as a laborer, in 1966 he was offered a promotion which would take him from the bargaining unit to salary status. At that time Mr. Guy Raymond, who was personnel manager for defendant's Lancaster plant, testified that he reviewed the benefits and rights which plaintiff would receive as a result of the promotion. The witness pointed out that plaintiff was concerned at the time regarding his rights and benefits as to whether his security with the company would possibly be jeopardized. Plaintiff was particularly concerned about severance pay or

separation pay. The witness, Guy Raymond, reviewed the severance or separation pay with plaintiff and told him that "unless he would be discharged for cause, which would be gross misconduct or drunkenness and so forth, he would be entitled to severance pay." (Italics supplied.)

It is noteworthy that while the new matter in the answer of defendant in paragraph 8 states that while defendant was terminated for a variety of reasons, including but not limited to failure to properly perform his work and failure to comply with company rules and policies, there is not an iota of testimony in the record to show why defendant was terminated. From this it is obvious that it was not because of his failure to properly perform his work or failure to comply with company rules and policies. While it appears in the record that plaintiff saw or knew about the policy statement relative to severance pay, it appears to the court that the testimony of Mr. Raymond hereinabove referred to, plus the fact that other witnesses called by defendant, admitted that no communication was ever had between them and plaintiff explaining his right to severance pay when they talked with him about pension, insurance benefits, etc., the question of whether the severance pay was a contractural obligation between the parties hereto was a matter for the jury. In addition, in the new matter defendant admitted that it did have a separation policy for salaried personnel.

An announced and admitted policy of defendant company to pay separation pay or termination pay to plaintiff constitutes, in the court's opinion, part of plaintiff's contract of employment with defendant and as such gives him a right to enforce payment of the same. While technically separation or termination pay is a sum voluntarily paid to an employe over and

above his wages, it is in reality merely an additional arrangement for compensation for his services. In Tucker v. Tucker, 370 Pa. 8, at pages 16 and 17, the following language appears: "A second claim of plaintiffs arises from the fact that one Ahrens, who had been employed by Bernard Tucker's Sons for some 40 years, received, under an oral agreement made by the attorneys for the parties in 1942, a bonus of eight per cent of the annual profits in addition to his salary; this bonus was paid to him regularly, without any objection on the part of plaintiffs, from that time on for each of the years up to 1946 inclusive. They dispute, however, a similar allowance made to Ahrens for the year ending November 30, 1947. While technically a bonus is a sum voluntarily paid to an employe over and above his wages, it is in reality merely an additional arrangement for compensation for his services, and certainly in this case must be regarded as having been a justified and necessary expense of the business and therefore properly deductible in computing the net profits." While, as heretofore stated, the question of the plaintiff's entitlement to separation pay is a close one, the court determines that notwithstanding the language "may be paid separation pay," when considered with the other evidence in this case, entitles the plaintiff to said pay. This is true especially in view of the fact of plaintiff's testimony, corroborated by Guy Raymond, who, as stated above, was personnel manager for the Lancaster plant of defendant in 1966, when he told plaintiff he would receive severance pay unless he was discharged for cause, which would be gross misconduct and drunkenness and so forth, makes the question here a jury question as to whether or not there was a contract between the parties entitling plaintiff to separation pay.

For the foregoing reasons the court will discharge defendant's motion for a new trial and dismiss the motion for judgment n.o.v.

And now, May 5, 1972, the motion of defendant, Bearings Company of America Division of Federal-Mogul Corporation (BCA Division of Federal-Mogul Corporation), for a new trial is discharged and its motion for judgment n.o.v. is dismissed, and judgment is hereby entered on the verdict.